James Handy MOORE, et al.,
Plaintiffs-Respondents,

v.

Abner Mansfield BECK, Personal Representative of the Estate of J. Abner Beck, Deceased, and Abner Mansfield Beck, Individually, Defendants-Appellants.

No. 12977.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 5, 1984.

Jeffrey C. Vaughan, James Haw, Charleston, for defendants-appellants.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiffs-respondents.

FLANIGAN, Judge.

This is an action to quiet the title, [§ 527.150],[1] to the following described real estate in Mississippi County:

"That part of the South Half of Section 4, Township 26 North, Range 18 East, in Mississippi County, Missouri, lying between the fuse-plug lands and the low water mark of the Mississippi River."

The foregoing land will be referred to as Tract A. Tract A lies on the west side of the Mississippi River. Adjoining Tract A on the west are the "fuse-plug" lands.

---

1. All references to statutes are to RSMo 1978, V.A.M.S.

The court, sitting without a jury, entered judgment in favor of the plaintiffs, and defendants appeal. The original and sole defendant was J. Abner Beck, who died while the action was pending. The present defendants, substituted for decedent Beck, are his personal representative and his sole heir.

J. Abner Beck and two of the present plaintiffs, James Handy Moore and William B. Moore, were parties to an earlier quiet title action which involved six separate tracts in Mississippi County. The judgment in that prior action, Case No. 6976, was entered on April 21, 1972. It awarded two tracts to J. Abner Beck and four tracts to the Moores. One of the tracts awarded to the Moores was Tract IV, the legal description of which reads:

"TRACT IV—All that part of the South Half of Section 4, Township 26 North, Range 18 East in Mississippi County, Missouri, lying between the fuse-plug lands and the old right of way line of Levee District No. 1 of Mississippi County, Missouri, as it existed in 1920."

Tract A includes, but is not limited to, Tract IV. On this appeal, however, the only area in dispute is that portion of Tract A which constitutes Tract IV. In 1979, at the instance of J. Abner Beck, some concrete anchors were installed on a portion of Tract IV. That conduct precipitated this action.

At the trial the plaintiffs, who included James Handy Moore and William B. Moore and those claiming under them, introduced into evidence, without objection, the judgment in Case No. 6976. Defendants' counsel, during the course of the trial, stated to the trial court that the location "of that 1920 right of way [as used in the description of Tract IV] is going to be for you to determine and one of the ultimate, if not the ultimate issue in this lawsuit."

Plaintiffs introduced evidence with respect to the location of "the old right of way line of Levee District No. 1 in Mississippi County as it existed in 1920," and that evidence, which the trial court believed, supports the trial court's ruling. In fact one of defendants' exhibits, attached to defendants' answer to an interrogatory, was consistent with plaintiffs' position with respect to the location of that line. Although defendants had that exhibit marked for identification, they decided, for obvious reasons, not to offer it and plaintiffs did so.

Defendants' first and second points will be considered together. Those points assert that the judgment in Case No. 6976, in which the description of Tract IV is contained, is invalid and that the judgment should not have been a factor, which it was, in the trial court's ruling. Defendants make three attacks on the 1972 judgment.

■ First, defendants assert that the 1972 judgment is void because, at the time of its rendition, there were persons (including some of the present plaintiffs) who held record title to portions of Tract IV and who were not parties to Case No. 6976. Their non-joinder, say defendants, invalidates the 1972 judgment.

J. Abner Beck was a party to Case No. 6976. Any issue with regard to non-joinder of parties in Case No. 6976 should have been raised during its trial or appellate stage, as was done in the cases on which defendants rely. If J. Abner Beck were still living he could not, in this action, challenge the validity of the judgment in Case No. 6976 on the ground of non-joinder of parties. *Estate of Pettit v. Levine,* 657 S.W.2d 636, 641[7, 8] (Mo.App.1983); *Schodde v. United States,* 69 F.2d 866, 870[12] (9th Cir.1934); *Sample v. Ward,* 156 Fla. 210, 23 So.2d 81, 84[3] (1945); *Comisky v. Moore,* 26 Ill.2d 494, 187 N.E.2d 256, 258[2] (1962); *Miller v. Muir,* 115 Ind.App. 335, 56 N.E.2d 496, 504[11] (1944); *Moody v. Branson,* 136 P.2d 925, 927 (Okl.1943); *State Mortgage Corporation v. Garden,* 11 S.W.2d 212, 213[5–7] (Tex.Civ.App.1928); 46 Am.Jur.2d Judgments § 649, p. 807; 49 C.J.S. Judgments § 429, p. 853. See also *Egan v. Woelfel,* 323 Mo. 27, 18 S.W.2d 50, 51[1, 2] (1929).

Defendants are in privity with J. Abner Beck and claim through him and thus they too are precluded from making this collater-

al attack upon the 1972 judgment. *State ex rel. Nelson v. Hammett,* 240 Mo.App. 307, 203 S.W.2d 115, 122[10] (Mo.App.1947); *Estate of Davis v. Davis,* 574 S.W.2d 477, 479[2] (Mo.App.1978); 46 Am.Jur.2d Judgments § 628, p. 786; 49 C.J.S. Judgments § 413, p. 817.

◼ Second, defendants assert that the 1972 judgment should not have been a factor in the trial court's ruling because it was "entered upon the stipulation of the parties to Case No. 6976 rather than after an adversary hearing on the merits." There is no merit in that assertion. "[A] judgment pronounced by consent of parties or upon stipulation should be accorded the same force as other judgments." *McDougal v. McDougal,* 279 S.W.2d 731, 738–739[19] (Mo.App.1955). "Judgments, including judgments by agreement, are conclusive of matters adjudicated and are not subject to collateral attack except upon jurisdictional grounds." *N.W. Electric Power Coop., Inc. v. American M. Ins. Co.,* 451 S.W.2d 356, 365[12] (Mo.App. 1969); 50 C.J.S. Judgments § 630, p. 55. The general principles in regard to collateral attacks upon judgments apply to judgments by consent. 47 Am.Jur.2d Judgments § 1097, p. 154.

◼ Third, defendants assert that the 1972 judgment merely "fixed an uncertain boundary line." There is no factual support for this contention. Apparently what the defendants have in mind is the situation in *Carroz v. Kaminiski,* 467 S.W.2d 871 (Mo. banc 1971), where adjoining land owners had a dispute with respect to the location *on the ground* of the boundary between the two tracts but neither claimed any title to the land to which the other held title. There the court said such a dispute is not a title controversy and that ejectment, rather than a suit to quiet title, "is the appropriate remedy for the determination of a boundary line." An examination of the 1972 judgment, however, makes it clear that the titles to the six tracts involved in that action, including Tract IV, were litigated and determined. Defendants' first two points have no merit.

◼ Before defendants' other points are considered it is necessary to point out some principles which control the relationship between this action and Case No. 6976. Judgment in that prior action was entered on April 21, 1972, and it awarded Tract IV to the instant plaintiffs. If, which need not be decided, J. Abner Beck, at any time prior to April 21, 1972, was in actual and adverse possession of Tract IV, since the judgment in that quiet title action was adverse to him, "such judgment, though not disturbing the actual possession of [J. Abner Beck] has, by its decree of title in the other party not in possession, the effect of interrupting the adverse possession as of the date of such judgment, and the period of limitations must commence anew from that date." *Matthews v. Citizens' Bank of Senath,* 329 Mo. 556, 46 S.W.2d 161, 164[7] (1932).

◼ Further, the doctrine of res judicata applies to judgments in quiet title actions. *Randall v. Schmidt,* 159 S.W.2d 637, 639 (Mo.1941); *Hutchinson v. Patterson,* 226 Mo. 174, 126 S.W. 403, 404–405 (1910); *Autenrieth v. Bartley,* 238 Mo.App. 55, 176 S.W.2d 546 (1943). The 1972 judgment had the effect of adjudicating the title in plaintiffs Moore and matters purportedly affecting the title and antedating the rendition of that judgment cannot be relitigated by defendant Beck or his privies. *Hutchinson,* supra; *Autenrieth,* supra. See also *Emmert v. Aldridge,* 231 Mo. 124, 132 S.W. 1050 (1910). The doctrine of res judicata applies, except in instances not applicable here, "not only to points and issues upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Autenrieth,* supra, at p. 549.

◼ Defendants' third point attempts to attack the efficacy of a 1967 quit claim deed. That issue, if such it was, was one for litigation in Case No. 6976 and was set at rest, favorably to the instant plaintiffs, by the judgment in that action. Other contentions made in defendants' argument un-

der its third point deal with pre-1972 matters and are of no moment.

Defendants' fourth point is that the trial court erred in excluding testimony of witnesses Raymond Hutcheson and Clint Hutcheson and deposition testimony of J. Abner Beck with regard to statements made by Beck concerning his ownership of Tract IV.

"Declarations could not prove title. Nevertheless, both the acts and the declarations of a person in possession of land, even when made to third parties, are admissible to show the hostile character of the possession and to show the intention with which the possession was taken." *Stephens v. Fowlkes,* 338 Mo. 527, 92 S.W.2d 617, 620[5] (1936). On the other hand, "Prejudicial error or reversible error in the admission or rejection of evidence is not an issue on an appeal in an equity case [or in any case tried before the court without a jury]. The issue is whether the evidence should have been admitted and considered, or rejected and not considered, and when that issue is determined the next issue is what the judgment of the court should be, based on a consideration of the competent and admissible evidence." *Thau-Nolde, Inc. v. Krause Dental Sup. & Gold Co., Inc.,* 518 S.W.2d 5, 9 (Mo.1974).

■ The testimony of Raymond Hutcheson was properly excluded because it dealt with statements allegedly made by Beck between 1939 and 1942. Any significance those statements may have had was eliminated by the judgment in Case No. 6976.

■ With respect to the testimony of Clint Hutcheson, the trial court rejected an offer of proof that the witness would testify that J. Abner Beck told him "repeatedly from 1943 up until close to the time of his death [2] that he was the owner of Tract IV." The error, if any, on the part of the trial court in rejecting the offer of proof was non-prejudicial for the reason that defend-

ants' evidence, even if aided by the excluded testimony, was insufficient to show acquisition of title by adverse possession after the date of rendition of the 1972 judgment.

■ It is true that the *filing* of the instant action, a suit to quiet title under § 527.150, would not suspend the running of the statute of limitations [§ 516.010] in favor of defendants if in fact they established the elements of adverse possession for the period commencing anew from the date of the judgment in Case No. 6976. *Peper v. St. Louis Union Trust Co.,* 281 Mo. 562, 219 S.W. 942, 947[5] (1920), but that principle [3] is of no aid to defendants here.

■ Defendants' brief makes no effort to show that defendants and J. Abner Beck "had possession of [Tract IV] for the statutory period (10 years) and that such possession was (1) actual, (2) hostile, i.e., under claim of right, (3) open and notorious, (4) exclusive, and (5) continuous." *White v. Wilks,* 357 S.W.2d 908, 912 (Mo.1962). There was no showing of the exclusiveness or continuity of such possession and indeed the actual possession was at most limited and sporadic. The record seems to indicate, and defendants' brief does not demonstrate otherwise, that the trial court in fact admitted the deposition testimony of J. Abner Beck but, even if the trial court had excluded that testimony, there would have been no prejudicial error for the reasons just stated.

Although the instant judgment was rendered on October 14, 1982, and it was theoretically possible for defendants to have acquired title by adverse possession prior to its rendition, they made no such proof. Defendants' fourth point has no merit.

■ Defendants' fifth point challenges the correctness of certain findings made by the trial court. Some of those findings concern pre-1972 matters and are of no moment. There may be some inaccuracies in other findings, perhaps contributed to by

---

2. The record does not show the date of Beck's death. It was not before February 4, 1981, for he gave his deposition on that date.

3. "[I]n cases filed under [§ 527.150] ... a party has the right to rely on a title acquired even after the commencement of the suit." *Bailey v. Williams,* 326 S.W.2d 115, 121 (Mo.1959).

the slipshod manner in which some evidence was presented to the trial court, but they do not impair the soundness and validity of the trial court's judgment nor do they warrant discussion. Defendants' fifth point has no merit.

Defendants properly point out that the description of the land, as contained in the trial court's judgment, is faulty. The description refers to "Range 13 East" when the proper language is "Range 18 East." There may be, as defendants claim, other errors in the description. The record does not provide this court with the information necessary to correct them. Appropriate instructions with respect to same will be contained in this court's mandate.

The judgment is affirmed and the cause remanded for the sole purpose of correcting the land description contained in the judgment.

GREENE, C.J., CROW, P.J., and MAUS and PREWITT, JJ., concur.